1  **Richard Sax  (SBN 80632)** *richard@rsaxlaw.com*
   **LAW OFFICES OF RICHARD SAX**
2  448 Sebastopol Avenue
   Santa Rosa, CA.  95401
3  Telephone: (707) 525-1824
   Facsimile:   (707) 525-8119
4
5  Attorney for Plaintiff,
   CORREY ALCANTRA, de facto Tribal Chairman
6  of the Coyote Valley Band of Pomo Indians

7              **UNITED STATES DISTRICT COURT**
8              **NORTHERN DISTRICT OF CALIFORNIA**

9
   CORREY ALCANTRA, de facto Tribal                    CASE NO.:
10 Chairman of the Coyote Valley Band of
   Pomo Indians,
11
12                          Plaintiff,
13 v.
14 COYOTE VALLEY BAND OF POMO
   INDIANS; COYOTE VALLEY BAND
15 OF POMO INDIANS TRIBAL
   COUNCIL; JOHN FELIZ JR.,                            COMPLAINT FOR DECLARATORY
16 individually and as a former Chairman               RELIEF,  IMPOSITION OF
   of the Tribal Council;  PATRICK                     CONSTRUCTIVE TRUST,
17 NAREDO, individually and as Vice-                   CONVERSION, BREACH OF
   Chairman of the Tribal Council;  JOHN               FIDUCIARY DUTY, VIOLATION
18 FELIZ SR.,  individually and as a former            OF THE INDIAN CIVIL RIGHTS
   Historian of the Tribal Council;                    ACT (25 U.S.C. §§ 1301-1304), and
19 CANDACE GONZALEZ (nee LOWE),                         CONSPIRACY
20 individually and as Secretary of the
   Tribal Council; KELLI JAYNES,
21 individually and as Treasurer of the
   Tribal Council; and MELINDA
22 HUNTER, individually and as Council
23 Member at Large
24
25                                                      **DEMAND FOR JURY TRIAL**
26                          Defendants.
27
28

                                    1

**INTRODUCTION**

1.      This is an action for Declaratory Relief, Imposition of Constructive Trust, Conversion, Breach of Fiduciary Duty, Violation of the Indian Civil Rights Act (25 U.S.C. §§ 1301-1304), and Conspiracy. This action is brought by Correy Alcantra, de facto Chairperson of the Coyote Valley Indian Tribe, which is located in Redwood Valley, California.

**JURISDICTION**

2.      This Court has subject-matter jurisdiction over the matters in this Complaint pursuant to 25 U.S.C. §1331, in that the District Courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, and the Indian Civil Rights Act (25 U.S.C. §§ 1301-1304).

**INTRADICTRICT ASSIGNMENT (Local Rule 3-5(b)**

3.      Assignment to the Eureka Division is proper under Civil L.R. 3.2(c) because a substantial part of the events or omissions which give use to the claims herein occurred within the State of California, County of Mendocino. Pursuant to Civil L.R. 3.2(f), all civil actions which arise in the counties of Del Norte, Humboldt, Lake and Mendocino, except for cases not assigned to the magistrate judges pursuant to the Court's Assignment Plan, shall be assigned to the Eureka Division.

**PARTIES**

4.      At all times relevant herein, plaintiff CORREY ALCANTRA ("Plaintiff") has been, and is, a citizen of the United States, a resident of Sonoma County, California, and a rightful member of the Coyote Valley Band of Pomo Indians. Plaintiff is de facto Tribal Chairman of the Coyote Valley Band of Pomo Indians pursuant to an election at the annual General Council meeting on December 11, 2010, and events thereafter, including a decision of the United States Department of the Interior Bureau of Indian Affairs ("BIA") dated June 24, 2011, which was affirmed after appeal by the BIA on November 15, 2011.

5.      Defendant COYOTE VALLEY BAND OF POMO INDIANS (the "Tribe") is, and at all times herein mentioned was, an Indian tribe whose jurisdiction extends to all lands within the boundaries of its 70-acre reservation, located in Redwood Valley, California, as described in the deed recorded in Book 1230, Page 339, Official Records of the County of Mendocino.

6.      Defendant COYOTE VALLEY BAND OF POMO INDIANS TRIBAL COUNCIL ("Tribal Council") is elected from the General Council of the Tribe every four years, as prescribed in the governing document of the Tribe, "The Document Embodying the Laws, Customs and Traditions of the Coyote Valley Band of Pomo Indians." Organized in 1976, the seven-member Tribal Council is charged with the responsibility of maintaining governmental relationships, managing Tribal affairs, and promoting the economic well-being of the Tribe.

7.      Defendant JOHN FELIZ JR., individually and as a former Chairman of the Tribal Council (hereinafter referred to as "Feliz Jr.") is over the age of 18, and, by information and belief, was the alleged Chairman of the Tribal Council until on or about December 4, 2012, and at all times pertinent to the events that underlie this Complaint.

8.      Defendant PATRICK NAREDO, individually and as Vice-Chairman of the Tribal Council (hereinafter referred to as "Naredo"), is over the age of 18, by information and belief a resident of Mendocino County, California, and the alleged Vice-Chairman of the Tribal Council at all times pertinent to the events that underlie this Complaint.

9.      Defendant JOHN FELIZ SR., individually and as a former Historian of the Tribal Council at all times pertinent to the events that underlie this Complaint (hereinafter referred to as "Feliz Sr."), is over the age of 18 and is an alleged Tribal Council Member.

10.     Defendant CANDACE GONZALEZ (by information and belief, nee LOWE), individually and as Secretary of the Tribal Council (hereinafter referred to as

"Gonzalez nee Lowe"), is over the age of 18, by information and belief a resident of Mendocino County, California, and the alleged Secretary of the Tribal Council at all times pertinent to the events that underlie this Complaint.

11.     Defendant KELLI JAYNES, individually and as Treasurer of the Tribal Council (hereinafter referred to as "Jaynes"), is over the age of 18, by information and belief a resident of Mendocino County, California, and the alleged Treasurer of the Tribal Council at all times pertinent to the events that underlie this Complaint.

12.     Defendant MELINDA HUNTER, individually and as Council Member-at-Large (hereinafter referred to as "Hunter"), is over the age of 18, by information and belief a resident of Mendocino County, California, and an alleged Council Member-at-Large at all times pertinent to the events that underlie this Complaint.

14.     Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

15.     Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the defendants was the agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged, was acting in the course and scope of such agency and employment. All Defendants have joint and several liability.

## BACKGROUND

16.     In 1979, a Secretarial proclamation declared the Coyote Valley reservation to be a federally recognized Indian reservation. The United States maintains government-to-government relations with the Tribe through its Tribal Council and General Council, pursuant to a February 20, 1976 final declaratory judgment and permanent

injunction issued by the United States District Court, Northern District of California, in actions Nos. 73-0334 and 74-0005.

17.     The Tribe is governed by its Tribal Council and General Council pursuant to its governing document ratified by the General Council on October 4, 1980, "The Document Embodying the Laws, Customs and Traditions of the Coyote Valley Band of Pomo Indians" (hereinafter the "Governing Document").

18.     The Governing Document vests governmental power in the General Council, which consists of all qualified voters of the Tribe, and which exercises all powers of self-government through the initiative, referendum, repeal, and recall procedures specified in Articles I, XII, and XIII of the Governing Document, and in accordance with Article IV—Governing Body Section 2 and  3--Powers. The majority of the Tribe's affairs are managed by the General Council and Tribal Council in accordance with Article IV—Governing Body, Section 3.

19.     The General Council elects from its membership a seven-person Tribal Council, which exercises, concurrently with the General Council, all powers delegated to it by the General Council in Article XII, and otherwise vested in the Tribal Council by the Governing Document. Pursuant to Article VI, Tribal Council, 3-e, Terms of Office, the seven (7) members of the Tribal Council includes the President (Chief) of the General Council; Chairman; Vice Chairman; Secretary; Treasurer; Historian; and the Council Person.

20.     The Governing Document, in Article X—VACANCIES, <u>Section 1. Vacancy on Council,</u> states:

> "If any member of the tribal council or any elected officer of the Band during the term of this office, shall die, resign or be absent from regular Tribal or General Council meetings two (2) successive unexcused times, or three (3) unexcused times in any twelve (12) month period, the Tribal Council shall declare the position vacant. If a member of the Tribal Council or any elected officer of the Band, during the term of his office, is convicted of any felony or found guilty of any crime involving moral turpitude, or commits any act

which will reflect on the dignity and integrity of the tribal government, the Tribal or General Council <u>may</u> declare the position vacant by a majority vote. If less than twelve (12) months of the term remains, the Tribal Council shall fill the vacancy by appointment of a tribal member who qualifies for candidacy to the vacant position. If more than twelve (12) months remain in the unexpired term, a special election shall be called to fill the vacant position."

21.    On December 11, 2010, at the annual General Council meeting, Plaintiff brought forth charges against defendant Feliz Jr. for illegal credit card use, and against Tribal Secretary Gonzalez nee Lowe on grounds she was absent from regular General Council meetings three (3) unexcused times in a twelve month period (March 2010, June 2010, and September 2010). Pursuant to Article X of the Governing Document, Plaintiff made a motion to declare their positions vacant.

22.    Plaintiff had provided proper notice dated November 19, 2010, to the Tribal membership of his intent to amend the General Council meeting agenda to include charges against Feliz Jr. and Gonzalez nee Lowe, and had sent Feliz Jr. and Gonzalez nee Lowe notice by certified mail of the charges against them and the meeting notice.

23.    At the December 11, 2010, meeting, the General Council voted on Plaintiff's motions to vacate the positions of Feliz Jr. and Gonzalez nee Lowe, and Plaintiff's motions passed. The Chief indicated that the motions were out of order and non-binding, and that Tribal Council members could only be removed by a vote of the entire membership at an election called for that purpose.

24.    The General Council issued a Notice of Special General Council Meeting to be held on May 21, 2011, charging four (4) members of the then-Tribal Council, and also the then-Chief of the General Council, of violations under Article X of the Governing Document, by taking actions that reflect on the dignity and integrity of the tribal government. Specifically, they were charged with refusing to comply with a legal and binding motion to vacate the Chairman and Secretary Tribal Council positions as a result of the motions which were passed at the December 11, 2010 annual General

Council meeting. The Tribal Council members and Chief were given proper notice and the right to call witnesses on their behalf, to be represented by legal counsel, to cross examine witnesses, present documentary evidence, and address the General Council. However, the Tribal Council members and Chief chose to argue that they were not required to answer such charges instead of attending the Special General Council Meeting.

25.    On April 22, 2011, the Tribal Council issued notices to Plaintiff and several members of the Tribe, stating that they were suspended from receiving any benefits from the Tribe due to their alleged "questionable eligibility" for membership. The notices were sent only to those Tribal members that were of the Lemieux family lineage. Vacated chairman and defendant Feliz Jr. signed the notices, which were intended to repudiate the Tribal heritage of Plaintiff and his family and deny them the significant financial benefits of Tribal membership, including valuable educational benefits held in trust for children.

26.    On May 21, 2011, forty-seven (47) voting members of the General Council were present at the Special General Council Meeting, establishing a quorum. The General Council voted to vacate the four (4) members of the then-Tribal Council and the then-Chief of the General Council, who had been charged with violations under Article X of the Governing Document. The General Council voted to fill the vacated positions by appointment. Also during that meeting, the General Council approved Resolution 05212011-#4, which authorized the BIA to recognize the actions of the General Council in vacating the Tribal positions.

27.    The charges, brought by Plaintiff and other members of the Tribe pursuant to the Governing Document, including Article X—VACANCIES, Section 1. Vacancy on Council, were as follows: 1) as to defendant Chairman Feliz Jr.: illegal credit use; 2) as to defendant Tribal Secretary Gonzalez nee Lowe: absent from regular general council meetings three (3) unexcused times; 3) as to defendants Vice-Chairman Naredo, Historian Feliz Sr., Treasurer Jaynes, Council Member-at-Large Hunter, and Chief of

7
138140

the General Council Campbell Sr.: violations of the Bylaws, customs and traditions of the Tribe for moral turpitude, and committing acts which reflect the dignity and integrity of the tribal government, stemming from a disregard of official actions by the General Council taken to remove the Tribal Secretary and the Chairman.

28.     Subsequent to the May 21, 2011 meeting, the vacated Chief made the declaration that in accordance with the notice of April 22, 2011, in which the Tribal Council notified Plaintiff and several other members of the Tribe that they were suspended from receiving any benefits from the Tribe due to their alleged "questionable eligibility" for membership in the Tribe, the allegedly questionable members did not, and had not, possessed the right to call a special meeting of the General Council, or even the right to vote. Thus, any actions taken at the December 11, 2010 meeting were allegedly invalid.

29.     On May 22, 2011, Plaintiff sent a letter and supporting documentation to the BIA, receiving a favorable decision from the BIA Superintendent, filed on June 24, 2011. The Superintendent's June 24th decision was issued in response to the action that occurred during the Special General Council held by the General Council on May 21, 2011. In the June 24th decision, the Superintendent determined "the Bureau will recognize those actions only if there is assurance that they were conducted in accordance with tribal law," and concluded that "on May 21, 2011, the General Council, governing body of the Band, complied with the [Tribal Governing Document], specifically, Article X, Section 1." (See **Exhibit 1; Exhibit 2**, page 1-2**.)**

30.     The Superintendent also concluded that "Nowhere does the governing document indicate that the Tribal Chief has the authority to make such an interpretation" that the "questionable members" did not have the right to call a special meeting of the general council or the right to vote, and thus any actions taken at the December 11, 2010 meeting were invalid. (See **Exhibit 1,** page 5.)

31.     On May 27, 2011, a letter was sent to Tribal membership and administration, restoring the status of the Lemieux Tribal lineage, and stating that all actions of the Feliz Jr. Tribal Council were null and void.

32.     On July 21, 2011, Defendants Feliz Jr., Naredo, Gonzalez nee Lowe, Jaynes, Hunter, Feliz Sr., and Campbell filed a Notice of Appeal pursuant to 25 CFR § 2.9 in their purported official capacities of the Tribe.  (See **Exhibit 2**, page 1.)

33.     On August 1, 2011, the Tribal Council denied applications for enrollment in the Tribe from Plaintiff and another individual, due to alleged insufficient evidence that they were eligible for Tribal membership. However, the purported disenrollments by the Tribal Council did not occur until after the Tribal Council positions had been vacated and replaced. Any purported determinations regarding the membership status of Plaintiff and other Tribal members was not rendered until well after the Special General Council meeting of May 21, 2011, where the positions of the Tribal Council members who purported to disenroll Plaintiff and other Tribal members had been vacated. The presence of 47 voting members of the General Council at the May 21, 2011 Special General Council meeting established a quorum consistent with Article V of the Tribe's Governing Document, which required 20% of the total voting membership of the Tribe for establishment of a quorum.

34.     On November 15, 2011, the BIA Acting Regional Director made another decision in Plaintiff's favor (**Exhibit 2**), stating in its ruling in Administrative Appeal 1236-P5, "Here, the grounds for finding vacancies under Article X [of the Tribal Governing Document] were satisfied" (**Exhibit 2**, page 5), and the General Council, as governing body of the Tribe in the May 21, 2011 Special Meeting, had "properly exercised their authority under Article X of the Governing Document." (**Exhibit 2**, page 8.) The BIA further held, "We will recognize the government led by [Plaintiff] Correy Alcantra, Vice-Chairman, Jamie Naredo, Secretary, and Keith Lemieux, Jr., Council Member-at-Large for the next 90 days, for the limited purpose of carrying out government-to-

government relations and conducting a special election in accordance with Tribal Law." (**Exhibit 2**, page 8.)

35.     However, tribal police with guns then began to threaten Plaintiff, asking him to leave the reservation and even having him arrested for trespassing. Tribal police told Plaintiff that he was disenrolled, was no longer a member of the Tribe, and was banned from the reservation.

36.     In direct contradiction to the above actions of the tribal police, a letter signed by Feliz Jr. as Chairman of the Tribe, dated February 1, 2005, confirmed that Plaintiff was, and rightfully is, an enrolled member of the Tribe. Plaintiff's mother, born in 1933, was on the October, 1940, census of tribal lands, and Plaintiff is her lineal descendant. However, Plaintiff and other members of his family, including at least three nephews and two nieces, are now being denied their heritage as members of the Tribe, and rightful trust fund monies.

37.     Plaintiff and other Tribal members were unlawfully disenrolled from the Tribe for charging the then-Tribal Chairman, Feliz Jr., with illegally using Tribal credit cards for his personal expenses. Members of the Tribal Council attempted to conceal Feliz Jr.'s actions, so the General Council vacated them in the Special General Council meeting on May 21, 2011. The BIA, in two rulings—the June 24, 2011 decision and the November 15, 2011 decision—affirmed the actions of the General Council at the December 11, 2010 and May 21, 2011 meetings. Plaintiff was lawfully appointed Chairman, and his appointment and the Tribal Council appointments were upheld in the BIA rulings.

38.     Defendants' actions and elections following the lawful December 11, 2010 and May 21, 2011 General Council meetings were illegal, because Defendants did not give proper notice of the General Council meetings and elections to Plaintiff and other Tribal members, and would not let them vote. Defendants' actions and elections following the lawful December 11, 2010 and May 21, 2011 General Council meetings

were also illegal because Defendants' positions had already been vacated in accordance with the Governing Document of the Tribe.

39.    In March of 2017, Plaintiff was again arrested by tribal police for allegedly trespassing on the reservation, which he is rightfully entitled to enter. His bail was $10,000.00; after another arrest in October of 2017, Plaintiff's bail was $5,000.00. On neither occasion did Defendants bother to show up in court in support of their claims.

40.    On October 3, 2017, Tribal Council members, including Chairman Correy Alcantra, Plaintiff; Vice-Chair Gary Alcantra; Historian Cruz Martinez Jr.; Member at Large Sarah Alcantra; and Tribal Chief Ruth Alcantra, among others, determined that they would retain legal counsel to prove that they are the rightful and legal Tribal Council through the Court system, and certified their action in this regard.

41.    On December 6, 2017, Plaintiff sent a notice to the Indian Dispute Resolution Service, Illegal Election Committee and Troy Burdick, BIA Superintendent, copying Amy Dutshcke, BIA Regional Director, and Congressman Jared Huffman. The notice, concerning repeated invalid Tribal elections, stated:

> "Again I am informing all here that any election without the entire membership is invalid. My family line was never legally disenrolled. So all elections are illegal. We would go to meetings if the tribal police would stop arresting or threatening to arrest us. Troy Burdick, BIA superintendent, is fully aware of the ongoing situation. Just as everyone else.
>
> "IDRS will be held accountable for taking money illegally from the tribe. Just as the illegal election committee will be held accountable.
>
> "This as the other tribal elections are being disputed by my entire family line. I was properly elected as tribal chairman and am representing all that were illegally attempted to be disenrolled. We don't need 180 letters being sent. Everyone knows what the problems are.

"For the record in a 2015 letter Amy Dutshcke, regional director, says my family line didn't submit our enrollment document. Yes we all did. All stamped and legal. Meaning when we do take our seats all will answer for their illegal conduct."

## EXHAUSTION OF TRIBAL REMEDIES

42.   Plaintiff believes that he has exhausted all existing tribal remedies, and knows of no available tribal courts or judicial system in which to further seek relief. The Tribe has no formal courts or other justice structure known to Plaintiff with which to further redress grievances.

43.   Plaintiff alleges that the Tribe's assertion of tribal jurisdiction is conducted in bad faith and would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction. In addition, an adherence to the exhaustion requirement would serve no purpose other than to further delay Plaintiff's right to petition for a redress of grievances.

## COUNT ONE: DECLARATORY RELIEF
### Plaintiff Against All Defendants

44.   Plaintiff hereby incorporates by reference paragraphs 1 through 43 of this Complaint as though fully set forth herein.

45.   An actual controversy has arisen and now exists between Plaintiff and Defendants relative to their respective rights and duties, in that Plaintiff contends that Defendants' unlawful elections, meetings, and disenrollments were invalid and unenforceable, both on their face and as construed by Defendants, in that Defendants' elections after the December 11, 2010 and May 21, 2011 meetings were illegal, because they did not give proper notice of the General Council meetings and elections to Plaintiff and other Tribal members and would not let them vote, and Defendants' positions had already been vacated in accordance with the provisions of the Tribe's Governing Document. Plaintiff and other Tribal members assert that they were

138140

illegally disenrolled from the Tribe, in violation of the Articles of the Tribe's Governing Document. Defendants dispute these contentions and contend that their actions were, and are, valid.

46.     Plaintiff desires a declaration as to the validity of Defendants' actions as heretofore described, both on their face and as applied to Plaintiff's activities, and if Defendants' actions are found to be valid, whether Plaintiff's above-described activities are violative of the Articles of the Tribe's Governing Document. A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain his rights and duties without first subjecting himself to liability by violating the provisions of the Tribe's Governing Document. Irreparable injury will result to Plaintiff unless the declaration is made, because Plaintiff was (and rightfully is) a lawfully enrolled member of the Tribe. Plaintiff and other members of his family, including at least three nephews and two nieces, are being denied their rightful heritage as members of the Tribe, including, but not limited to, their trust fund monies and benefits as members of the Tribe.

### COUNT TWO: IMPOSITION OF CONSTRUCTIVE TRUST
### Plaintiff Against All Defendants

47.     Plaintiff hereby incorporates by reference paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.     Since on or about December 11, 2010 and May 21, 2011, in Mendocino County, California, Defendants have become unjustly enriched to the detriment of Plaintiff for money in a sum according to proof, received from Plaintiff's interests and diverted or directed to Defendants' use. On April 22, 2011, the Tribal Council issued notices to Plaintiff and several members of the Tribe, stating that they were suspended from receiving any benefits from the Tribe due to their alleged "questionable eligibility" for membership. The notices were sent only to those Tribal members that were of the Lemieux family lineage. Vacated chairman and defendant Feliz Jr. signed the notices,

1   which were intended to repudiate the Tribal heritage of Plaintiff and his family and

2   deny them the significant financial benefits of Tribal membership, including valuable

3   educational benefits held in trust for children and benefits as members of the Tribe.

4   49.   No payment has been made by Defendants to Plaintiff, although demand has

5   been made, and there is now due and owing a sum according to proof, together with

6   interest at the legal rate from the date of each act of unjust enrichment.

7   50.   By virtue of their fraudulent acts, Defendants hold the real and personal

8   property described above as a constructive trustee for Plaintiff's benefit.

9   51.   As a proximate result of Defendants' wrongful conduct, Plaintiff has been

10  damaged in an unknown amount, according to proof.

11

12                          **COUNT THREE: CONVERSION**
13                        **Plaintiff Against All Defendants**

14  52.   Plaintiff hereby incorporates by reference paragraphs 1 through 51 of this

15  Complaint, as to COYOTE VALLEY BAND OF POMO INDIANS; COYOTE VALLEY

16  BAND OF POMO INDIANS TRIBAL COUNCIL; JOHN FELIZ JR., individually and

17  as a former Chairman of the Tribal Council;  PATRICK NAREDO, individually and as

18  Vice-Chairman of the Tribal Council;  JOHN FELIZ SR.,  individually and as a former

19  Historian of the Tribal Council;  CANDACE GONZALEZ (nee LOWE), individually

20  and as Secretary of the Tribal Council; KELLI JAYNES, individually and as Treasurer

21  of the Tribal Council; and MELINDA HUNTER, individually and as Council Member

22  at Large, as though fully set forth herein.

23  53.   Defendants have taken property from Plaintiff as heretofore described, including

24  Plaintiff's valuable trust fund monies and benefits as a member of the Tribe, and

25  converted it to their own use.

26  54.   Plaintiff has repeatedly demanded the return of the property, but Defendants

27  have failed and refused to return it to Plaintiff.

28

55.     As a proximate result of Defendants' wrongful conduct, Plaintiff has been damaged in an unknown amount, according to proof.

### COUNT FOUR:  BREACH OF FIDUCIARY DUTY
### Plaintiff Against All Defendants

56.     Plaintiffs hereby incorporate by reference paragraphs 1 through 55 of this Complaint, as to COYOTE VALLEY BAND OF POMO INDIANS; COYOTE VALLEY BAND OF POMO INDIANS TRIBAL COUNCIL; JOHN FELIZ JR., individually and as a former Chairman of the Tribal Council;  PATRICK NAREDO, individually and as Vice-Chairman of the Tribal Council;  JOHN FELIZ SR.,  individually and as a former Historian of the Tribal Council;  CANDACE GONZALEZ (nee LOWE), individually and as Secretary of the Tribal Council; KELLI JAYNES, individually and as Treasurer of the Tribal Council; and MELINDA HUNTER, individually and as Council Member at Large, as though fully set forth herein.

57.     Defendant COYOTE VALLEY BAND OF POMO INDIANS (the "Tribe") is, and at all times herein mentioned was, an Indian tribe whose jurisdiction extends to all lands within the boundaries of its 70-acre reservation, located in Redwood Valley, California, as described in the deed recorded in Book 1230, Page 339, Official Records of the County of Mendocino.

58.     At all times herein mentioned, Defendants JOHN FELIZ JR., individually and as a former Chairman of the Tribal Council;  PATRICK NAREDO, individually and as Vice-Chairman of the Tribal Council;  JOHN FELIZ SR.,  individually and as a former Historian of the Tribal Council;  CANDACE GONZALEZ (nee LOWE), individually and as Secretary of the Tribal Council; KELLI JAYNES, individually and as Treasurer of the Tribal Council; and MELINDA HUNTER, individually and as Council Member at Large, were officers of the Tribal Council or the General Council of the Tribe, and members of the Tribe.

59.     In acting as hereinabove described, Defendants did not exercise the care required of members and/or officers of the Tribe because of their grossly unjust, arbitrary, and capricious refusal to honor the Articles and provisions of the Governing Document of the Tribe. On April 22, 2011, the Tribal Council issued notices to Plaintiff and several members of the Tribe, stating that they were suspended from receiving any benefits from the Tribe due to their alleged "questionable eligibility" for membership. The notices were sent only to those Tribal members that were of the Lemieux family lineage. Vacated chairman and defendant Feliz Jr. signed the notices, which were intended to repudiate the Tribal heritage of Plaintiff and his family and deny them the significant financial benefits of Tribal membership, including, but not limited to, valuable educational benefits held in trust for children.

60.     As a proximate result of the acts of Defendants as hereinabove described, which were performed with malice, oppression, reckless indifference, and a willful and conscious disregard for the rights of Plaintiff, placing Defendants' actions outside of the scope of their duties as members and/or officers of the Tribal Council or General Council, Plaintiff suffered severe emotional distress and mental suffering, all to his damage, including, but not limited to: serious injury and damages, loss of use of property, general damage, property damage, great mental and nervous pain and suffering, emotional distress, relocation costs, and denial of his heritage and rightful trust fund monies and other benefits as a member of the Tribe. Plaintiff is informed and believes and thereon alleges that he has been damaged according to proof. The acts of Defendants justify the awarding of exemplary and punitive damages.

### COUNT FIVE: VIOLATION OF THE INDIAN CIVIL RIGHTS ACT
### (25 U.S.C. §§ 1301-1304)
### Plaintiff Against All Defendants

61.     Plaintiff hereby incorporates by reference paragraphs 1 through 60 of this Complaint, as to COYOTE VALLEY BAND OF POMO INDIANS; COYOTE VALLEY

1  BAND OF POMO INDIANS TRIBAL COUNCIL; JOHN FELIZ JR., individually and
2  as a former Chairman of the Tribal Council;  PATRICK NAREDO, individually and as
3  Vice-Chairman of the Tribal Council;  JOHN FELIZ SR.,  individually and as a former
4  Historian of the Tribal Council;  CANDACE GONZALEZ (nee LOWE), individually
5  and as Secretary of the Tribal Council; KELLI JAYNES, individually and as Treasurer
6  of the Tribal Council; and MELINDA HUNTER, individually and as Council Member
7  at Large, as though fully set forth herein.

8  62.     Count Five of this Complaint is brought under the Indian Civil Rights Act, or
9  ICRA, 25 U.S.C. §§ 1301-1304, which provides in relevant part:

> **"§ 1302. *Constitutional Rights: No Indian tribe in exercising powers of self-government shall:***
>
> **(a) In general**
>
> "No Indian tribe in exercising powers of self-government shall—
>
> 1.     make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances….
>
> 8.     deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law…"

63.     Count Five is brought under ICRA for the intentional violation of Plaintiff's
right to petition for a redress of grievances and exercise of civil rights as guaranteed
by the Tribe's Governing Document and the provisions of ICRA; for equal protection
under the Tribe's laws; and to remedy a deprivation of liberty and property without
due process of law.

64.     The Tribe's Governing Document, in Article X—VACANCIES, <u>Section 1.
Vacancy on Council,</u> states:

1
2
3
4
5
6
7
8
9
10
11
12

"If any member of the tribal council or any elected officer of the Band during the term of this office, shall die, resign or be absent from regular Tribal or General Council meetings two (2) successive unexcused times, or three (3) unexcused times in any twelve (12) month period, the Tribal Council shall declare the position vacant. If a member of the Tribal Council or any elected officer of the Band, during the term of his office, is convicted of any felony or found guilty of any crime involving moral turpitude, or commits any act which will reflect on the dignity and integrity of the tribal government, the Tribal or General Council may declare the position vacant by a majority vote. If less than twelve (12) months of the term remains, the Tribal Council shall fill the vacancy by appointment of a tribal member who qualifies for candidacy to the vacant position. If more than twelve (12) months remain in the unexpired term, a special election shall be called to fill the vacant position."

13
14
15
16
17
18

65.     On December 11, 2010, at the annual General Council meeting, Plaintiff brought forth charges against defendant Feliz Jr. for illegal credit card use, and against Tribal Secretary Gonzalez nee Lowe on grounds she was absent from regular General Council meetings three (3) unexcused times in a twelve month period (March 2010, June 2010, and September 2010). Pursuant to Article X of the Governing Document, Plaintiff made a motion to declare their positions vacant.

19
20
21
22

66.     Plaintiff had provided proper notice dated November 19, 2010, to the Tribal membership of his intent to amend the General Council meeting agenda to include charges against Feliz Jr. and Gonzalez nee Lowe, and had sent Feliz Jr. and Gonzalez nee Lowe notice by certified mail of the charges against them and the meeting notice.

23
24
25
26
27

67.     At the December 11, 2010, meeting, the General Council voted on Plaintiff's motions to vacate the positions of Feliz Jr. and Gonzalez nee Lowe, and Plaintiff's motions passed. The Chief indicated that the motions were out of order and non-binding, and that Tribal Council members could only be removed by a vote of the entire membership at an election called for that purpose.

28

68.     The General Council issued a Notice of Special General Council Meeting to be held on May 21, 2011, charging four (4) members of the then-Tribal Council, and also the then-Chief of the General Council, of violations under Article X of the Governing Document, by taking actions that reflect on the dignity and integrity of the tribal government. Specifically, they were charged with refusing to comply with a legal and binding motion to vacate the Chairman and Secretary Tribal Council positions as a result of the motions which were passed at the December 11, 2010 annual General Council meeting. The Tribal Council members and Chief were given proper notice and the right to call witnesses on their behalf, to be represented by legal counsel, to cross examine witnesses, present documentary evidence, and address the General Council. However, the Tribal Council members and Chief chose to argue that they were not required to answer such charges instead of attending the Special General Council Meeting.

69.     On April 22, 2011, the Tribal Council issued notices to Plaintiff and several members of the Tribe, stating that they were suspended from receiving any benefits from the Tribe due to their alleged "questionable eligibility" for membership. The notices were sent only to those Tribal members that were of the Lemieux family lineage. Vacated chairman and defendant Feliz Jr. signed the notices, which were intended to repudiate the Tribal heritage of Plaintiff and his family and deny them the significant financial benefits of Tribal membership, including valuable educational benefits held in trust for children.

70.     On May 21, 2011, forty-seven (47) voting members of the General Council were present at the Special General Council Meeting, establishing a quorum. The General Council voted to vacate the four (4) members of the then-Tribal Council and the then-Chief of the General Council, who had been charged with violations under Article X of the Governing Document. The General Council voted to fill the vacated positions by appointment. Also during that meeting, the General Council approved Resolution

1   05212011-#4, which authorized the BIA to recognize the actions of the General Council

2   in vacating the Tribal positions.

3   71.    The charges, brought by Plaintiff and other members of the Tribe pursuant to the

4   Governing Document, including Article X—VACANCIES, <u>Section 1. Vacancy on

5   Council,</u> were as follows: 1) as to defendant Chairman Feliz Jr.: illegal credit use; 2) as

6   to defendant Tribal Secretary Gonzalez nee Lowe: absent from regular general council

7   meetings three (3) unexcused times; 3) as to defendants Vice-Chairman Naredo,

8   Historian Feliz Sr., Treasurer Jaynes, Council Member-at-Large Hunter, and Chief of

9   the General Council Campbell Sr.: violations of the Bylaws, customs and traditions of

10  the Tribe for moral turpitude, and committing acts which reflect the dignity and

11  integrity of the tribal government, stemming from a disregard of official actions by the

12  General Council taken to remove the Tribal Secretary and the Chairman.

13  72.    Subsequent to the May 21, 2011 meeting, the vacated Chief made the declaration

14  that in accordance with the notice of April 22, 2011, in which the Tribal Council

15  notified Plaintiff and several other members of the Tribe that they were suspended

16  from receiving any benefits from the Tribe due to their alleged "questionable

17  eligibility" for membership in the Tribe, Plaintiff and the other allegedly

18  "questionable" members did not, and had not, possessed the right to call a special

19  meeting of the General Council, or even the right to vote. Thus, Defendants claimed

20  that any actions taken at the December 11, 2010 meeting were allegedly invalid.

21  73.    On May 22, 2011, Plaintiff sent a letter and supporting documentation to the BIA,

22  receiving a favorable decision from the BIA Superintendent, filed on June 24, 2011. The

23  Superintendent's June 24th decision was issued in response to the action that occurred

24  during the Special General Council held by the General Council on May 21, 2011. In the

25  June 24th decision, the Superintendent determined "the Bureau will recognize those

26  actions only if there is assurance that they were conducted in accordance with tribal

27  law," and concluded that "on May 21, 2011, the General Council, governing body of

28

1   the Band, complied with the [Tribal Governing Document], specifically, Article X,

2   Section 1." (See **Exhibit 1; Exhibit 2**, page 1-2**.)**

3   74.    The Superintendent also concluded that "Nowhere does the governing

4   document indicate that the Tribal Chief has the authority to make such an

5   interpretation" that the "questionable members" did not have the right to call a special

6   meeting of the general council or the right to vote, and thus any actions taken at the

7   December 11, 2010 meeting were invalid. (See **Exhibit 1,** page 5.)

8   75.    On May 27, 2011, a letter was sent to Tribal membership and administration,

9   restoring the status of the Lemieux Tribal lineage, and stating that all actions of the

10  Feliz Jr. Tribal Council were null and void.

11  76.    On July 21, 2011, Defendants Feliz Jr., Naredo, Gonzalez nee Lowe, Jaynes,

12  Hunter, Feliz Sr., and Campbell filed a Notice of Appeal pursuant to 25 CFR § 2.9 in

13  their purported official capacities of the Tribe.  (See **Exhibit 2**, page 1.)

14  77.    On August 1, 2011, the Tribal Council denied applications for enrollment in the

15  Tribe from Plaintiff and another individual, due to alleged insufficient evidence that

16  they were eligible for Tribal membership. However, the purported disenrollments by

17  the Tribal Council did not occur until after the Tribal Council positions had been

18  vacated and replaced. Any purported determinations regarding the membership status

19  of Plaintiff and other Tribal members was not rendered until well after the Special

20  General Council meeting of May 21, 2011, where the positions of the Tribal Council

21  members who purported to disenroll Plaintiff and other Tribal members had been

22  vacated. The presence of 47 voting members of the General Council at the May 21, 2011

23  Special General Council meeting established a quorum consistent with Article V of the

24  Tribe's Governing Document, which required 20% of the total voting membership of

25  the Tribe for establishment of a quorum.

26  78.    On November 15, 2011, the BIA Acting Regional Director made another decision

27  in Plaintiff's favor (**Exhibit 2**), stating in its ruling in Administrative Appeal 1236-P5,

28  "Here, the grounds for finding vacancies under Article X [of the Tribal Governing

Document] were satisfied" (**Exhibit 2**, page 5), and the General Council, as governing body of the Tribe in the May 21, 2011 Special Meeting, had "properly exercised their authority under Article X of the Governing Document." (**Exhibit 2**, page 8.) The BIA further held, "We will recognize the government led by [Plaintiff] Correy Alcantra, Vice-Chairman, Jamie Naredo, Secretary, and Keith Lemieux, Jr., Council Member-at-Large for the next 90 days, for the limited purpose of carrying out government-to-government relations and conducting a special election in accordance with Tribal Law." (**Exhibit 2**, page 8.)

79.   However, tribal police with guns then began to threaten Plaintiff, asking him to leave the reservation and even having him arrested for trespassing. Tribal police told Plaintiff that he was disenrolled, was no longer a member of the Tribe, and was banned from the reservation.

80.   In direct contradiction to the above actions of the tribal police, a letter signed by Feliz Jr. as Chairman of the Tribe, dated February 1, 2005, confirmed that Plaintiff was, and rightfully is, an enrolled member of the Tribe. Plaintiff's mother, born in 1933, was on the October, 1940, census of tribal lands, and Plaintiff is her lineal descendant. However, Plaintiff and other members of his family, including at least three nephews and two nieces, are now being denied their heritage as members of the Tribe, and rightful trust fund monies.

81.   Plaintiff and other Tribal members were unlawfully disenrolled from the Tribe for charging the then-Tribal Chairman, Feliz Jr., with illegally using Tribal credit cards for his personal expenses. Members of the Tribal Council attempted to conceal Feliz Jr.'s actions, so the General Council vacated them in the Special General Council meeting on May 21, 2011. The BIA, in two rulings—the June 24, 2011 decision and the November 15, 2011 decision—affirmed the actions of the General Council at the December 11, 2010 and May 21, 2011 meetings. Plaintiff was lawfully appointed Chairman, and his appointment and the Tribal Council appointments were upheld in the BIA rulings.

82.    Defendants' actions and elections following the lawful December 11, 2010 and May 21, 2011 General Council meetings were illegal, because Defendants did not give proper notice of the General Council meetings and elections to Plaintiff and other Tribal members, and would not let them vote. Defendants' actions and elections following the lawful December 11, 2010 and May 21, 2011 General Council meetings were also illegal because Defendants' positions had already been vacated in accordance with the Governing Document of the Tribe.

83.    In March of 2017, Plaintiff was again arrested by tribal police for allegedly trespassing on the reservation, which he is rightfully entitled to enter. His bail was $10,000.00; after another arrest in October of 2017, Plaintiff's bail was $5,000.00. On neither occasion did Defendants bother to show up in court in support of their claims.

84.    On October 3, 2017, Tribal Council members, including Chairman Correy Alcantra, Plaintiff; Vice-Chair Gary Alcantra; Historian Cruz Martinez Jr.; Member at Large Sarah Alcantra; and Tribal Chief Ruth Alcantra, among others, determined that they would retain legal counsel to prove that they are the rightful and legal Tribal Council through the Court system, and certified their action in this regard.

85.    On December 6, 2017, Plaintiff sent a notice to the Indian Dispute Resolution Service, Illegal Election Committee and Troy Burdick, BIA Superintendent, copying Amy Dutshcke, BIA Regional Director, and Congressman Jared Huffman. The notice, concerning repeated invalid Tribal elections, stated:

> "Again I am informing all here that any election without the entire membership is invalid. My family line was never legally disenrolled. So all elections are illegal. We would go to meetings if the tribal police would stop arresting or threatening to arrest us. Troy Burdick, BIA superintendent, is fully aware of the ongoing situation. Just as everyone else.

> "IDRS will be held accountable for taking money illegally from the tribe. Just as the illegal election committee will be held accountable.

138140

"This as the other tribal elections are being disputed by my entire family line. I was properly elected as tribal chairman and am representing all that were illegally attempted to be disenrolled. We don't need 180 letters being sent. Everyone knows what the problems are.

"For the record in a 2015 letter Amy Dutshcke, regional director, says my family line didn't submit our enrollment document. Yes we all did. All stamped and legal. Meaning when we do take our seats all will answer for their illegal conduct."

86.     The wrongful acts of Defendants, and each of them, all alleged above, intentionally violated Plaintiff's right to redress of grievances and exercise of civil rights as guaranteed by the Tribe's Governing Document and the provisions of ICRA; intentionally violated Plaintiff's right to equal protection under the Tribe's laws; and intentionally deprived Plaintiff and members of his family of liberty and property without due process of law.

87.     As a proximate result of the acts of Defendants, Plaintiff suffered severe emotional distress and mental suffering, all to his damage, including, but not limited to: serious injury and damages, general damage, great mental and nervous pain and suffering, emotional distress, and denial of his rightful trust fund monies and heritage as a member of the Tribe. Plaintiff is informed and believes and thereon alleges that he has been damaged according to proof.

88.     As a proximate result of the wrongful acts of Defendants, Plaintiff is in addition entitled to recover a statutory civil penalty in the amount of $25,000.00, as provided in Civil Code § 52(b).

89.     The above-recited actions of Defendants were performed with malice, oppression, reckless indifference, and a willful, reckless, and conscious disregard for the rights of Plaintiff and his family. The above-recited acts of Defendants placed their actions outside of the scope of their duties as members and/or officers of the Tribal Council or General Council. Specifically, the actions of Defendants described in Count

Five of this Complaint justify the awarding of exemplary and punitive damages, pursuant to Civil Code § 3294.

90.     Defendants' wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable to Plaintiff in that Defendants, and each of them, all alleged above, intentionally violated Plaintiff's right to redress of grievances and exercise of civil rights as guaranteed by the Tribe's Governing Document and the provisions of ICRA; intentionally violated Plaintiff's right to equal protection of the Tribe's laws; and intentionally deprived Plaintiff and members of his family of liberty and property without due process of law. Defendants' actions caused Plaintiff to suffer severe emotional distress and mental suffering, all to his damage, including, but not limited to: serious injury and damages, general damage, great mental and nervous pain and suffering, emotional distress, and denial of his rightful heritage and trust fund monies as a lawful member of the Tribe.

91.     Plaintiff has no adequate remedy at law for the injuries currently being suffered, in that he has exhausted he has exhausted all existing tribal remedies, and knows of no available tribal courts or judicial system in which to further seek relief. The Tribe has no formal courts or other justice structure known to Plaintiff with which to further redress grievances. Plaintiff alleges that the Tribe's assertion of tribal jurisdiction is conducted in bad faith and would be futile because of the lack of an adequate opportunity to challenge the tribal jurisdiction. In addition, an adherence to the exhaustion requirement would serve no purpose other than to further delay Plaintiff's right to petition for a redress of grievances.    Therefore, Plaintiff will be forced to institute a multiplicity of suits to protect himself against the ongoing interference with his legal rights.

92.     Plaintiff has incurred attorney fees in an amount according to proof for the retention of counsel to advise him of his rights and prepare this Complaint. Plaintiff expects to incur additional attorney's fees in an amount according to proof by the conclusion of this action for preparation and conduct of trial.

1
2

**COUNT FIVE: CONSPIRACY**

**Plaintiff Against All Defendants**

3      93.    Plaintiff hereby incorporates by reference paragraphs 1 through 92 of
4      Complaint as to all Defendants as though fully set forth herein.

5      94.    Plaintiff alleges that Defendants had a duty to uphold the Articles and provisions
6      of the Tribe's Governing Document; the lawful decisions and actions of the General
7      Council in the December 11, 2010 and May 21, 2011 meetings; the decision of the BIA
8      Superintendent dated June 24, 2011; the decision of the BIA Acting Regional Director
9      dated November 15, 2011; and the right of Plaintiff and his family to their Tribal
10     heritage and rightful trust fund monies.

11     95.    Defendants conspired to deceive Plaintiff and his family, and to deprive them of
12     their heritage and rightful trust fund monies as enrolled members of the Tribe; and to
13     deprive Plaintiff of his lawful appointment as Chairman of the Tribal Council,
14     pursuant to the actions and appointments of the General Council in the meetings on
15     December 11, 2010 and May 21, 2011. Tribal police with guns threatened Plaintiff and
16     asked him to leave the reservation, even having him repeatedly arrested for
17     trespassing, and banning Plaintiff and his family from the reservation.  However, a
18     letter dated February 1, 2005, signed by Feliz Jr. as Chairman of the Tribe, confirmed
19     that Plaintiff was (and rightfully is) an enrolled member of the Tribe. Plaintiff and
20     other members of his family, including at least three nephews and two nieces, are
21     being denied their rightful trust fund educational and other monies. Plaintiff and other
22     Tribal members were illegally disenrolled from the Tribe for charging the then-Tribal
23     Chairman, Feliz Jr., with illegally using Tribal credit cards for his personal expenses.
24     Members of the Tribal Council attempted to conceal Feliz Jr.'s actions, so the General
25     Council vacated them in the Special General Council meeting on May 21, 2011. The
26     BIA, in two rulings—the June 24, 2011 decision and the November 15, 2011 decision—
27     affirmed the actions of the General Council at the December 11, 2010 and May 21, 2011
28     meetings. Plaintiff was lawfully appointed Chairman, and his appointment and the

1  Tribal Council appointments were upheld in the BIA rulings. Defendants' elections
2  after the December 11, 2010 and May 21, 2011 meetings were illegal, because they did
3  not give proper notice of the General Council meetings and elections to Plaintiff and
4  other Tribal members, and would not let them vote.

5  96.     Defendants, and each of them, committed the above-described acts pursuant to
6  an agreement by and between Defendants to defraud Plaintiff, and to induce Plaintiff
7  to forego seeking redress for the wrongs committed; to intentionally violate Plaintiff's
8  right to redress of grievances and exercise of civil rights as guaranteed by the Tribe's
9  Governing Document and the provisions of ICRA; to intentionally violate Plaintiff's
10 right to equal protection of the Tribe's laws; to intentionally deprive Plaintiff and
11 members of his family of liberty and property without due process of law; to
12 intentionally make and enforced laws abridging the freedom of speech and the right
13 of the people to peaceably to assemble and to petition for a redress of grievances; and
14 to cause Plaintiff to suffer severe emotional distress and mental suffering, all to his
15 damage, including, but not limited to: serious injury and damages, general damage,
16 great mental and nervous pain and suffering, emotional distress, and denial of his
17 rightful heritage and trust fund monies as a member of the Tribe.

18 97.     As a direct and proximate result of Defendants' agreement and conspiracy to
19 commit the fraudulent and unlawful acts described herein, Plaintiff has suffered
20 compensable damages according to proof.

21 98.     Additionally, Defendants engaged in this conspiracy to defraud with malice and
22 oppression, and Plaintiff is therefore entitled to an award of punitive damages.
23 Further, Plaintiff will suffer an irreparable injury not compensable in damages if the
24 ultimate object of Defendants' conspiracy—a denial of Plaintiff and his family's rightful
25 heritage and trust fund monies as members of the Tribe—takes place.

26 //
27 //
28 //

1

2

**WHEREFORE,** Plaintiff prays judgment against Defendants as follows:

3

**COUNT ONE: DECLARATORY RELIEF**
**Plaintiff Against All Defendants**

4

5

1.    That the Court declare the respective rights and duties of Plaintiff and Defendants under the Governing Document of the Tribe, and that by its declaration and judgment the Court declare that Defendants' unlawful elections, meetings, and disenrollments were invalid and unenforceable, both on their face and as construed by Defendants, in that Defendants' elections after the December 11, 2010 and May 21, 2011 meetings were illegal, because they did not give proper notice of the General Council meetings and elections to Plaintiff and other Tribal members and would not let them vote, and Defendants' positions had already been vacated in accordance with the provisions of the Tribe's Governing Document. Plaintiff and other Tribal members assert that they were illegally disenrolled from the Tribe, in violation of the Articles of the Tribe's Governing Document.

6

7

8

9

10

11

12

13

14

15

2.    That the Court declare the respective rights and duties of Plaintiff and Defendants under the Governing Document of the Tribe, and that the Court make a declaration as to the validity of Defendants' actions as heretofore described, both on their face and as applied to Plaintiff's activities, and as to whether Defendants' above-described activities are violative of the Articles of the Tribe's Governing Document.

16

17

18

19

20

3.    A judicial declaration is necessary and appropriate at this time so that Plaintiff may ascertain his rights and duties without first subjecting himself to liability by violating the provisions of the Tribe's Governing Document. Irreparable injury will result to Plaintiff unless the declaration is made, because Plaintiff was (and rightfully is) a lawfully enrolled member of the Tribe. Plaintiff and other members of his family, including at least three nephews and two nieces, are being denied their rightful heritage as members of the Tribe, including, but not limited to, their trust fund monies.

21

22

23

24

25

26

27

28

## COUNT TWO: IMPOSITION OF CONSTRUCTIVE TRUST
### Plaintiff Against All Defendants

4.      For an order declaring that Defendants hold Plaintiff's interests in a constructive trust for Plaintiff's benefit;

5.      For an order that Defendants be compelled to convey Plaintiff's interests in his rightful trust fund monies as a member of the Tribe to Plaintiff;

6.      For an accounting of all property and/or monies held by Defendants that belong to and/or are owing to Plaintiff;

## COUNT THREE: CONVERSION
### Plaintiff Against All Defendants

7.      For damages in the value of property converted;

8.      For damages in the amount of the funds converted in an amount according to proof;

9.      For interest at the legal rate on the foregoing sums pursuant to Section 3336 of the Civil Code, from and after April 22, 2011;

10.     For damages for the proximate and foreseeable loss resulting from Defendants' conversion in an amount according to proof;

11.     For interest at the legal rate on the foregoing sums pursuant to Section 3287(a) of the Civil Code, from and after April 22, 2011, according to proof;

12.     For damages for time and money properly expended in pursuit of the converted property in a sum according to proof;

13.     For punitive and exemplary damages;

## COUNT FOUR: BREACH OF FIDUCIARY DUTY
### Plaintiff Against All Defendants

14.     For compensatory damages in a sum according to proof;

15.     For consequential and other damages in a sum according to proof;

138140

16.     For interest at the legal rate on the foregoing sums from and after on or about April 22, 2011;

17.     For punitive and exemplary damages;

18.     For reasonable attorney's fees in a sum according to proof;

### COUNT FIVE: VIOLATION OF THE INDIAN CIVIL RIGHTS ACT
### (25 U.S.C. §§ 1301-1304)
### Plaintiff Against All Defendants

19.     For actual damages in an amount according to proof;

20.     For a statutory civil penalty in the sum of $25,000.00, pursuant to Civil Code § 52(b);

21.     For exemplary and punitive damages;

22.     For an order requiring Defendants, and each of them, to show cause why they should not be enjoined as hereinafter set forth, during the pendency of this action;

23.     For a temporary restraining order, preliminary injunction, and permanent injunction, all enjoining Defendants, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them:

      a.     From violating Plaintiff's right to redress of grievances and exercise of civil rights as guaranteed by the Tribe's Governing Document and the provisions of ICRA; violating Plaintiff's right of equal protection under the Tribe's laws; to depriving Plaintiff and members of his family of liberty and property without due process of law; making and enforcing laws abridging the freedom of speech and the right of the people, including Plaintiff and his family, to peaceably to assemble and to petition for a redress of grievances; and causing Plaintiff to suffer severe emotional distress and mental suffering, all to his damage, including, but not limited to: serious injury and damages, loss of use of property, general damage, property damage, great mental and nervous pain and suffering, emotional distress, relocation costs, and denial of his rightful heritage and trust fund monies as a member of the Tribe.

      b.     To recognize Plaintiff's right to redress of grievances and exercise of civil rights as guaranteed by the Tribe's Governing Document and the provisions of ICRA,

and right of equal protection under the Tribe's laws; to refrain from depriving Plaintiff and members of his family of liberty and property without due process of law;  to refrain from making and enforcing laws abridging the freedom of speech and the right of the people, including Plaintiff and his family, to peaceably to assemble and to petition for a redress of grievances; to refrain from denying Plaintiff his rightful heritage and trust fund monies as a member of the Tribe.

c. To recognize that Defendants' actions and elections following the lawful December 11, 2010 and May 21, 2011 General Council meetings were illegal, because Defendants did not give proper notice of the General Council meetings and elections to Plaintiff and other Tribal members, and would not let them vote. Defendants' actions and elections following the lawful December 11, 2010 and May 21, 2011 General Council meetings were also illegal because Defendants' positions had already been vacated in accordance with the Governing Document of the Tribe. Therefore, any election held after the December 11, 2010 and May 21, 2011 meetings, was, and is, invalid, especially when undertaken without permitting Tribal Council members to vote, including Chairman Correy Alcantra, Plaintiff; Vice-Chair Gary Alcantra; Historian Cruz Martinez Jr.; Member at Large Sarah Alcantra; Secretary Sharlyne Burke, Treasurer Lindsay Salazar, and Tribal Chief Ruth Alcantra, among others.

d. To recognize that on May 21, 2011, forty-seven (47) voting members of the General Council were present at the Special General Council Meeting, establishing a quorum. The General Council voted to vacate the four (4) members of the then-Tribal Council and the then-Chief of the General Council, who had been charged with violations under Article X of the Governing Document. The General Council voted to fill the vacated positions by appointment. On November 15, 2011, the BIA Acting Regional Director made a decision in Plaintiff's favor (**Exhibit 2**), stating in its ruling in Administrative Appeal 1236-P5, "Here, the grounds for finding vacancies under Article X [of the Tribal Governing Document] were satisfied" (**Exhibit 2**, page 5), and the General Council, as governing body of the Tribe in the May 21, 2011 Special

Meeting, had "properly exercised their authority under Article X of the Governing Document." (**Exhibit 2**, page 8.) The BIA further held that it would recognize the government led by Plaintiff Correy Alcantra, Vice-Chairman, Jamie Naredo, Secretary, and Keith Lemieux, Jr., Council Member-at-Large. (**Exhibit 2**, page 8.)

24.      For attorney fees in an amount according to proof;

**COUNT SIX: CONSPIRACY**
**All Plaintiffs Against All Defendants**

25.      For damages in a sum according to proof;

26.      For interest on the above sums at the legal rate;

27.      For exemplary damages;

28.      For punitive damages in a sum sufficient to punish Defendants;

**ALL CAUSES OF ACTION**

29.      For costs of suit herein incurred; and,

30.      For such other and further relief as the Court may deem proper.

Dated:  December 29, 2017                    **/S/  Richard Sax**
                                             **RICHARD SAX**
                                             **Attorney for Plaintiff,**
                                             **Correy Alcantra, de facto**
                                             **Tribal Chairman of the**
                                             **Coyote Valley Band of**
                                             **Pomo Indians**

1

## DEMAND FOR JURY TRIAL

2

3        Plaintiff CORREY ALCANTRA, de facto Tribal Chairman of the Coyote Valley
Band of Pomo Indians, hereby demands a jury trial.

4

Dated:  December 29, 2017                              **/S/  Richard Sax**
5                                                       **RICHARD SAX**
6                                                       **Attorney for Plaintiff,**
                                                        **Correy Alcantra, de facto**
7                                                       **Tribal Chairman of the**
                                                        **Coyote Valley Band of**
8                                                       **Pomo Indians**

9

10                ## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

11

12        Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other

13   than the named parties, there is no such interest to report.

14

15   Dated:  December 29, 2017                          **/S/  Richard Sax**
16                                                       **RICHARD SAX**
                                                        **Attorney for Plaintiff,**
17                                                       **Correy Alcantra, de facto**
                                                        **Tribal Chairman of the**
18                                                       **Coyote Valley Band of**
                                                        **Pomo Indians**
19

20

21

22

23

24

25

26

27

28

1

## ATTESTATION

2

3         I, Richard Sax, hereby attest that I have on file all holographic signatures

corresponding to any signatures indicated by a conformed signature (/S/) within this

4    e-filed document.

5

Dated:  December 29, 2017                          **/S/  Richard Sax**

6                                                   **RICHARD SAX**

7                                                   **Attorney for Plaintiff,**

                                                    **Correy Alcantra, de facto**

8                                                   **Tribal Chairman of the**

                                                    **Coyote Valley Band of**

9                                                   **Pomo Indians**

10

11   //

12   //

     //

13   //

14   //

15   //

     //

16   //

17   //

18   //

     //

19   //

20   //

21   //

     //

22   //

23   //

24   //

     //

25   //

26   //

27   //

28   //

34

138140